Edna C. **HITCHCOCK**

v.

Norman A. **deBRUYNE** et al.

**Civ. No. B–839.**

United States District Court,
D. Connecticut.

June 11, 1974.

**1404**

Kenneth D. Wallace, Stamford, Conn., for plaintiff.

Paul E. Knag, and Warren W. Eginton, Stamford, Conn., for defendants.

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS

NEWMAN, District Judge.

This motion to dismiss, based on a defense of the statute of limitations, raises somewhat complex questions concerning the construction of federal and Connecticut securities laws. The suit arises from the purchase by plaintiff's deceased husband on November 30, 1969, of 65,000 shares of stock of Techne Systems, Inc. (TSI) from the corporation. Plaintiff, executrix and legatee of her husband's estate, filed suit on August 20, 1973, against defendant deBruyne, an officer and director of TSI, and the other individual and corporate defendants, who are alleged to have acted in concert with deBruyne to promote the sale of TSI stock. The complaint alleges in a single count, that the defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b–5, 17 C.F.R. § 240.10b–5; and § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q. Jurisdiction is supplied by 15 U.S.C. §§ 77v and 78aa.

Defendants move to dismiss, alleging that the complaint shows on its face that it is time-barred. The sale occurred more than three years prior to the filing of the complaint, and plaintiff alleges that she first learned of the representations and omissions made by defendants in December, 1970, more than two years before the complaint. The defense of statute of limitations can be raised by a motion to dismiss. Fouts v. Fawcett Publications, 116 F.Supp. 535 (D.Conn.1953).

The issue between the parties is which statute of limitations applies to this suit. Both agree that in the absence of a federal statute of limitations applicable to either § 10(b) of the '34 Act or § 17 of the '33 Act, the appropriate statute of limitations of the forum state applies. Auto Workers v. Hoosier Corp., 383 U.S. 696, 703–704, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Parrent v. Midwest Rug Mills, 455 F.2d 123, 125 (7th Cir. 1972); Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir. 1933). Defendants seek to invoke the two-year statute of limitations of the Connecticut Securities Act, Conn.Gen.Stat. § 36–346(e), barring suit more than two years after the contract of sale. Defendants concede, *arguendo*, that the two-year period, though specified to run from the date of the sale, could be determined under federal law to start running from the date of discovery of the alleged fraud, Vanderboom v. Sexton, *supra*, 422 F.2d, at 1240, still barring this suit. Plaintiff relies on Connecticut's general tort statute of limitations, Conn.Gen.Stat. § 52–577, barring suit brought more than three years after the act or omission complained of. Presumably, plaintiff also relies, either upon federal law, Bailey v. Glover, 88 U.S. 342, 22 L.Ed. 636 (1875), or state law, Conn.Gen.Stat. § 52–595, to start the three-year period running only from the alleged December, 1970, discovery of the fraud.

Both sides start from the premise that the appropriate state statute of limitations is the one that "best effectuates the federal policy at issue." Charney v. Thomas, 372 F.2d 97, 100 (6th Cir. 1967). They also agree that the limitations provisions of a state blue sky statute should be used where the substantive liability provisions of such a statute parallel Rule 10b–5. They further agree that in the Second Circuit liability under Rule 10b–5 requires scienter, Lanza v. Drexel Co., 479 F.2d 1277 (2d Cir. 1973), rather than mere negligence, Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961). However, they part company on whether, under the Connecticut Securities Act, Conn.Gen.Stat. § 36–320 et seq., the civil liability of non-sellers associated with a seller who has made false

statements or material omissions in connection with a sale of securities can be predicated on negligence or requires scienter similar to that of Rule 10b–5.[1]

The disputed interpretation of state law arises from the fact that the Connecticut statute follows in important respects the structure of the Uniform Securities Act, 9C Uniform Laws Annotated, but not always the language. The civil liability provisions of the Connecticut Act are set forth in § 36–346, containing eight subsections lettered (a) through (h). The structure is identical with the eight similarly-lettered subsections of § 410 of the Uniform Act. The wording of subsections (b) through (h) is virtually identical, but differences occur in the two versions of subsection (a). In the Uniform Act, § 410(a) permits a purchaser of securities to sue two groups of people, described in subparagraphs (1) and (2) of § 410(a). Section 410(a)(1) covers those who sell in violation of the registration provisions of the Uniform Act. Section 410(a)(2) imposes liability upon a person who

> offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the truth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

The Commissioners' Note observes that this clause "is almost identical with § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2)."

In the Connecticut Act, § 36–346(a) permits a purchaser to sue two groups of people, those who offer or sell a security in violation of § 36–322, which requires registration, and those who offer or sell a security in violation of § 36–338, which provides:

> (a) No person, in connection with the sale, offer to sell, purchase or offer to purchase of any security, directly or indirectly, shall (1) employ any device, scheme or artifice to defraud, (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or (3) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

This language is virtually identical with Rule 10b–5. Thus, when the Connecticut Act created civil liability in connection with false statements, it departed from the Uniform Act to incorporate the language of Rule 10b–5, rather than § 12(2) of the 1933 Act.[2]

■■ With these provisions in mind, the choice of an appropriate statute of limitations appears to be that contained in the Connecticut Securities Act, since its civil liability provision for false statements parallels Rule 10b–5. It is certainly to be expected that the state courts will interpret § 36–338 to have the same scienter requirement as the Second Circuit has found in the virtually identical language of Rule 10b–5.

■ Even if the Connecticut civil liability provision had been derived from § 12(2) of the '33 Act, that would not dispense with the scienter requirement,

---

1. There is irony but nonetheless validity in defendants' reliance on Vanderboom v. Sexton, *supra,* for the proposition that the limitations period of a state blue sky statute should control a 10b–5 action. *Vanderboom* equated the liability provisions of state and federal law by interpreting both to *dispense* with a scienter requirement. Defendants want to equate state and federal liability provisions in this case by contending that

under Connecticut's statutes and the Second Circuit's construction of federal law, both provisions *require* scienter.

2. The Uniform Act itself contains the language of Rule 10b–5 in its initial provision concerning prohibited practices, § 101; however, as § 410(h) and the Commissioners' Note to § 101 make clear, the Uniform Act does not create civil liability for violations of § 101.

as plaintiff assumes. In this Circuit, § 12(2) requires scienter, Barnes v. Osofsky, 373 F.2d 269, 272 (2d Cir. 1967), at least in the absence of privity. Lanza v. Drexel & Co., *supra*, 479 F.2d, at 1298.

Nevertheless, plaintiff cites § 36–346(b) to insist that the Connecticut standard for liability of non-sellers with respect to a false statement is negligence, without scienter. Section 36–346(b) is the Uniform Act's § 410(b), providing liability for non-sellers affiliated with a seller who violates § 410(a). This liability can be avoided by sustaining the burden of proof that the facts on which the seller's liability is predicated were not known and could not in the exercise of reasonable care have been known by the non-seller. It is arguable that in some jurisdictions, adoption of the Uniform Act's § 410(b) establishes civil liability without scienter, if that jurisdiction has also adopted § 410(a)(2) (based on § 12(2)) as the standard for seller's liability and if § 12(2) is not interpreted to require scienter. But in Connecticut, the liability of nonsellers under § 36–346(b) is for a seller's violation of § 36–338, which is not the counterpart of § 12(2), but of Rule 10b–5, with its scienter requirement as construed in this Circuit.

It is true that the affirmative defense of reasonable care, brought into § 36–346(b) from the Uniform Act's § 410(b), is somewhat anomalous when applied to a non-seller's liability for a § 36–338 violation by a seller. If the seller is liable for false statements only when scienter is shown, it is not likely that a director of the seller, for example, is liable for the same falsity subject only to a defense of reasonable care. Plaintiff suggests that the affirmative defense of reasonable care demonstrates that a non-seller's liability can be predicated on mere negligence, without scienter. That would make the non-seller liable in circumstances where the seller is not, a result not to be expected from the Connecticut courts.

The apparent anomaly of coupling a seller's liability for a § 36–338 violation with § 36–346(b)'s affirmative defense for a non-seller to such violation can be explained without reducing the non-seller's liability to mere negligence. Where a § 36–338 violation is involved, the affirmative defense may simply be surplusage, *i. e.*, the scienter requirement to be read into § 36–338 (to be consistent with the Second Circuit's view of Rule 10b–5) must also be read into § 36–346(b) when a non-seller's liability for a § 36–338 violation is involved. Of course, the affirmative defense has important significance when a non-seller is held under § 36–346(b) for a seller's violation of § 36–322, for in that situation, the affirmative defense insulates the non-seller from what otherwise would be strict liability for non-compliance with registration requirements.

Another explanation for the affirmative defense in § 36–346(b), where a § 36–338 violation is involved, is that the affirmative defense is almost the other side of the scienter coin. For example, in Cohen v. Franchard Corp., 478 F.2d 115, 123 (2d Cir. 1973), the Court of Appeals said the scienter requirement of Rule 10b–5 would be met if the defendant "failed . . . to ascertain [the material facts misstated or omitted] when they were readily available to him and he had reasonable grounds to believe that they existed." Even if this standard has survived *Lanza*, it imposes upon the defendant only a limited duty to investigate in rather narrowly defined circumstances, and it is still less burdensome for the defendant than the "mere negligence" standard of the courts that do not require scienter. A broader, though not limitless, duty to investigate was urged by Judge Hayes in his dissenting opinion in *Lanza*, 479 F.2d at 1317–1320, but the majority rejected this standard for Rule 10b–5. Furthermore, Judge Moore's opinion for the majority in *Lanza* pointedly observed that § 410(b) of the Uniform Act, with its affirmative defense of reasonable care, imposes "no affirmative duty of investigation" and catalogues § 33–346(b) among those state statutes that adopt §

410(b). *Id.* at 1308–1309 n. 105. Thus the affirmative defense of reasonable care cannot lower the non-seller's liability for a § 36–338 violation to mere negligence.

In addition to the parallel between Connecticut's civil liability provision for false statements and Rule 10b–5, one other factor supports selection of the limitations period of the state securities law. The two-year limitations period of that statute rather than the three-year provision for common law fraud is closer to the one-year provision of the federal securities law. The likely reason that the one-year provision does not apply explicitly to Rule 10b–5 violations is simply that liability for such violations was not expressly created by Congress but inferred by the courts.

█ For these reasons, the two-year statute of limitations of § 36–346(e) applies to plaintiff's cause of action founded on Rule 10b–5, and since the complaint shows on its face that it was filed more than two years after the violation was alleged to have been discovered, this cause of action is dismissed.

█ Defendants contend that if the cause of action founded on Rule 10b–5 is dismissed, the entire complaint should be dismissed, since only a single count is pleaded and it is specifically denominated as arising under federal law. Plaintiff responds that, even if the federal cause of action is subject to dismissal as time-barred, the complaint should be construed to plead a common law fraud cause of action for which jurisdiction founded on diversity of citizenship exists. Plaintiff has alleged 28 U.S.C. § 1332 as one jurisdictional basis. The allegations of the citizenship of some of the defendants are deficient, though perhaps easily remedied by amendment, since they are alleged to reside in states diverse from the state of plaintiff's citizenship. See Stern v. Beer, 200 F.2d 794, 795 (6th Cir. 1952); International Ladies' Garment Workers Union v. Donnelly Garment Company, 121 F.2d 561, 563 (8th Cir. 1941); 3 Moore's Federal Practice ¶ 15.09, at 945–48 (2d ed. 1974). More substantial hurdles will be faced in seeking to maintain this action against those defendants over whom personal jurisdiction was obtained only through the nationwide service of process provisions available for the federal cause of action. 15 U.S.C. § 78aa. See Mariash v. Morrill, 496 F.2d 1138 (2d Cir., 1974). Despite these problems, the complaint sufficiently pleads facts that put defendants on notice of a common law action for fraud, and there is no reason to deny plaintiff the opportunity to perfect such a cause of action against those defendants over whom personal jurisdiction can be properly asserted in the absence of the 10b–5 claim. See Nagler v. Admiral Corporation, 248 F.2d 319, 325, 328 (2d Cir. 1957); Gins v. Mauser Plumbing Supply Company, 148 F.2d 974, 976–977 (2d Cir. 1945); *cf.* Siegelman v. Cunard White Star, 221 F.2d 189, 196 (2d Cir. 1955); Matarese v. Moore-McCormack Lines, Inc., 158 F.2d 631, 633 (2d Cir.1946); see also 2A Moore's Federal Practice ¶ 8.14, at 1714–15 (2d ed. 1974).

Accordingly, the cause of action based on federal law is dismissed, but the motion to dismiss the entire complaint is denied, without prejudice to further motions by either side to perfect or challenge personal jurisdiction over the defendants.