**P. J. GRADY, INC., Plaintiff,**

v.

**GENERAL MOTORS CORPORATION,
Defendant.**

**No. 79 C 563.**

United States District Court,
E. D. New York.

June 8, 1979.

Jeffrey I. Silver, Lake Ronkonkoma, N.Y., for plaintiff.

Simpson, Thacher & Bartlett, New York City, for defendant by Conrad K. Harper, Veronica Dillon, New York City.

Otis M. Smith, General Counsel, General (Ala.Cr.App.1979); *Ex Parte Cook*, 369 So.2d 1251 (Ala.1978).

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Paul A. Grady, the son of Peter J. Grady, prosecutes this action on behalf of plaintiff corporation in an effort to prevent defendant from implementing its plan to "undual" the Buick and Chevrolet dealership that the Gradys have owned and operated in West Sayville since 1914. The action was removed by defendant to this court from the Supreme Court, Suffolk County, after plaintiff had obtained an order to show cause containing temporary restraints against termination of the Buick dealership. That order remains in effect by stipulation of the parties pending determination of plaintiff's motion for a preliminary injunction now before the court. The parties have also agreed that an evidentiary hearing is unnecessary on this motion.

According to the complaint, plaintiff operates authorized Buick and Chevrolet dealerships pursuant to separate agreements with the Buick Motor Division and the Chevrolet Motor Division of defendant General Motors. The Buick dealership, which was effective November 1, 1975, remains in force by its terms until October 31, 1980. Plaintiff claims that although it has performed "substantially" all of its obligations and responsibilities under this agreement defendant without cause terminated the agreement and otherwise failed to renew it in good faith in violation of provisions of Article 11–A of the New York General Business Law § 197 *et seq.*, and 15 U.S.C. § 1221 et seq., known as the Automobile Dealer's Day in Court Act ("DDICA").

Defendant contends that the agreement between the parties is a personal service agreement, which names Peter J. Grady as the sole Dealer Owner and Operator of the franchised Buick dealership. Under the terms of Article IV § (A)(4), the agreement was terminable upon Peter Grady's death. After his death in December 1977, defendant notified plaintiff of its intention to terminate pursuant to the contract term but deferred the effective termination date until February 28, 1979. The events leading to this action followed.

The gravamen of the complaint is that defendant has selectively chosen plaintiff's Buick dealership for termination relying upon the termination provision referred to above as a pretext. The sole issue before the court is whether plaintiff's termination pursuant to contract provision entitles it to a preliminary injunction in the circumstances presented in view of the restrictions placed upon such terminations by section 197 of the New York General Business Law and the federal DDICA.

The standard for injunctive relief in the circuit has been recently discussed in the case of *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2 Cir., 1979). The court reiterated the test stated in earlier cases, which calls for a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief" *Id.*, at 72, *citing Caulfield v. Board of Education*, 583 F.2d 605, 610 (2 Cir. 1978); *New York v. Nuclear Regulatory Commission*, 550 F.2d 745, 750, 755 (2 Cir. 1977); *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1358–59 (2 Cir. 1976).

Although the New York provisions—particularly section 198 which specifically permits the issuance of injunctions in certain circumstances—evince a legislative intent to make preliminary relief available without regard to the adequacy of a dealer's remedy at law, plaintiff's claim of entitlement to preliminary relief under the federal law is controlled by the traditional principles set forth above. Under this standard, plaintiff must demonstrate that his alleged injuries are not wholly compensable in monetary damages. See *Semmes Motors, Inc. v. Ford Motor Company*, 429 F.2d 1197, 1205 (2 Cir. 1970).

In *Semmes,* the court rejected Ford's contention that plaintiff had failed to show irreparable injury because its damages, assuming a wrongful termination, would be easily calculable. It held that plaintiff's right to continue in a business in which it had been engaged for twenty years was not measurable entirely in monetary terms; "the Semmes want to sell automobiles, not to live on the income from a damages award." *Id.* at 1205.

■ Here, however, the absence of any colorable allegation suggesting harm not compensable in monetary damages [1] amply supports the conclusion that plaintiff has made an insufficient showing of irreparable injury. See *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., supra.* The termination does not put plaintiff out of business, since it continues as a Chevrolet dealership. Further, plaintiff's suggestion that its possible loss of income satisfies the requirement for irreparable injury is without merit. While the termination has undoubtedly changed plaintiff's situation, this is not the test for issuance of a preliminary injunction. Rather, such a claim is readily compensable in monetary damages should plaintiff succeed on the merits of his claim. In the meantime, plaintiff is in a position not unlike the distributor with the exclusive franchise claiming breach of contract in *Jackson Dairy*: it has not shown that the effects of the claimed breach on its business are of sufficient magnitude to remove it from the rule that irreparable injury means injury for which monetary damages cannot adequately compensate a plaintiff, entitling it to preliminary relief.

There is, moreover, an additional reason plaintiff's motion must be denied. On the facts thus far before the court, plaintiff has not made a sufficient showing of a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor.

It appears that plaintiff has been aware of defendant's intention to undual the Buick franchise since at least May 1968. At a conference held at that time, attended by Peter Grady and General Motors officials, the reasons for seeking the "undualling" of the dealership were explicitly stated to be the trend to exclusive car dealerships in metropolitan areas, the growth of the area sufficient to support an exclusive Chevrolet dealership, and the possibility of better service arrangements for owners. Subsequent reevaluations of the situation at West Sayville led Buick officials to the conclusion that the Buick dealership should remain in effect until October 31, 1980,

> "provided that either Mr. P.J. Grady, Jr. or Mr. J.R. Grady [his brother] has at least a 50% ownership interest in this dealership company, either or both actively participates in its operation and management, your dealership company continues to occupy its present main facility and your dealership otherwise satisfactorily fulfills its responsibilities under its current and any future Buick Dealer Agreement." (Letter dated July 31, 1975, attached to affidavit of Margaret B. Devlin, Assistant Secretary of General Motors Corporation.)

It is undisputed that J.R. Grady, whether or not he maintains a 50% ownership interest in the dealership, no longer is active in its operation and management. It is, moreover, not contested that the condition in the agreement permitting termination upon the death of Peter J. Grady has occurred. Hence, plaintiff's termination conforms strictly and unquestionably to all understandings in force between the parties.

---

1. Plaintiff asserts that there is a public interest to be served in his continuing as a Buick dealer during the course of any litigation. There is no proof, however, to support a claim that Buick owners in the area would be deprived of service opportunities or that those interested in purchasing Buicks in the future would be deprived of the opportunity to do so. Presumably, plaintiff will continue to service his former Buick customers and, perhaps, will continue to do so even in competition with a new Buick dealership in the area. Moreover, General Motors is in the business of selling cars, including Buicks. Thus, it is apparent that it will not allow the West Sayville area to remain without a Buick dealer if there is an adequate market for an independent dealership as it contends.

■ Plaintiff argues nonetheless that it has demonstrated a likelihood of success on the merits or, at least, serious questions going to the merits warranting a preliminary injunction. It is clear, however, that defendant acted in "good faith" within the meaning of the DDICA. There is simply no allegation that defendant acted in a coercive, intimidating or threatening manner such as to bring the protections of the federal law into effect. See *Autowest, Inc. v. Peugeot, Inc.*, 434 F.2d 556, 561 (2 Cir. 1970). Without such a claim or proof of lack of good faith, there can be no relief under the DDICA, see *Pierce Ford Sales, Inc. v. Ford Motor Company*, 299 F.2d 425, 430 (2 Cir. 1962), *cert. denied*, 371 U.S. 829, 83 S.Ct. 24, 9 L.Ed.2d 66 (1962), even for arbitrary decisions with respect to termination of a dealership, *Overseas Motors, Inc. v. Import Motors Limited, Inc.*, 519 F.2d 119, 125 (6 Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1970); *Unionvale Sales Ltd. v. World-Wide Volkswagen Corp.*, 299 F.Supp. 1365, 1367 (S.D.N.Y. 1969). See also *Diehl & Sons, Inc. v. International Harvester Co.*, 426 F.Supp. 110 (E.D.N.Y.1976).

■ Plaintiff's claim under the New York statutes suffers a similar defect, although we are willing to assume for purposes of this motion that section 198 of the New York General Business Law is a legislative authorization for issuance of injunctions without regard to the monetary compensability of the injuries alleged: plaintiff must still demonstrate a likelihood of success on the merits, even as a matter of State law. See, *e.g., City of Buffalo v. Mangan*, 49 A.D.2d 697, 370 N.Y.S.2d 771 (4th Dept. 1975); *DeLury v. City of New York*, 48 A.D.2d 595, 378 N.Y.S.2d 49 (1st Dept. 1975).

■ The predicate for relief is at least a claim that plaintiff's termination was either not pursuant to contract or understanding between the parties, or was the result of some proscribed conduct on the part of defendant. No such allegation is made. On the contrary, plaintiff was terminated in strict accordance with the terms of the contract and for economic justifications of which plaintiff has been on notice since 1968. In such circumstances, a holding that applicable law permits issuance of an injunction against plaintiff's termination would literally deprive defendant of its ability to enter into binding contracts with its dealers.

While we recognize that the laws regulating this area were enacted to protect dealers, who might not be arms-length bargaining partners of large manufacturers, against arbitrary action and deprivation of their investments, there must be a point at which such manufacturers can lawfully—and without fear of court injunction—insist on and enforce contractual provisions. On the current record, it appears unlikely that plaintiff will be able to prove that defendant's conduct in entering into and enforcing the termination clause resulted in plaintiff's termination without cause within contemplation of the New York statute. See *Cycleway, Inc. v. Kawasaki Motors Corp.*, 77 Misc.2d 829, 354 N.Y.S.2d 812 (Sup.Ct. Oneida Cty.1974).

This result obtains despite the undisputed fact that defendant has not exercised its right to terminate plaintiff's Chevrolet dealership under an identical termination clause. The simple answer is contained in the clause itself, which vests the discretion for this decision wholly in General Motors. Plaintiff's argument with respect to selective termination, moreover, cuts two ways.

While the decision to maintain plaintiff as a Chevrolet dealership is some evidence that plaintiff's performance has been adequate at least with respect to Chevrolet sales, the same decision supports the conclusion that plaintiff's Buick dealership has been terminated for reasons quite apart from any improper animus directed at plaintiff or its current management or impermissible desire to deprive plaintiff of any right that properly belongs to it. It is doubtful that plaintiff's termination pursuant to the terms of the contract and under the circumstances outlined above could be considered without cause. Thus, plaintiff has also failed to sustain its burden of dem-

onstrating entitlement to a preliminary injunction under either the New York statute or the DDICA.

Accordingly, plaintiff's motion for preliminary injunction is denied in all respects.

Counsel for the parties are directed to appear at a conference on July 19, 1979 at 9:30 a. m. for the purpose of discussing pre-trial scheduling matters.

SO ORDERED.