SPEED AUTO SALES, INC., Plaintiff,

v.

AMERICAN MOTORS CORPORATION, American Motors Sales Corporation, and Jeep Corporation, Defendants.

No. 78 C 2823.

United States District Court, E. D. New York.

Oct. 1, 1979.

O'Rourke & Friedman, Brooklyn, by Michael J. O'Rourke, Brooklyn, for plaintiff.

Morgan, Lewis & Bockius, New York City, by Wallace J. Borker, James W. Harbison, Jr., Michael B. Evanoff, New York City, for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff, Speed Auto Sales, Inc. ("Speed"), operates an independent Jeep dealership pursuant to a franchise agreement with American Motors Sales Corporation ("AMC Sales"), a wholly owned subsidiary of American Motors Corporation ("AMC"). It claims that defendants have violated sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2; section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, the Dealer-Day-in-Court Act, 15 U.S.C. § 1221 et seq. ("DDICA"); New York General Business Law § 197 et seq.; and various State laws. Jurisdiction is alleged to arise under 28 U.S.C. § 1331, based on the asserted violations of the federal statutes. Diversity of citizenship is alleged as an alternative basis for subject matter jurisdiction.

Plaintiff seeks injunctive relief against further conduct purportedly in breach of plaintiff's franchise agreement and the antitrust laws, a direction that defendants continue to supply Jeep vehicles in accordance with plaintiff's needs, and money damages. The action is now before the court on plaintiff's motion for a preliminary injunction and defendants' cross-motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), F.R.Civ.P. Plaintiff's motion for a temporary restraining order has previously been denied.

According to the complaint, AMC, after acquiring the Jeep Corporation, advised then-existing Jeep dealers that they would not be required to accept AMC franchises in addition to the Jeep franchises. In 1978, however, defendants' representatives approached plaintiff with a plan that Speed close its own Jeep sales and service center, move its operation two blocks away to premises then occupied by Kings Plaza AMC ("Kings Plaza"), a factory outlet for AMC vehicles which had never before sold Jeeps, and operate a dual Jeep-AMC dealership.

Plaintiff further alleges that defendants' agents represented that Kings Plaza had never earned money and, in fact, had incurred substantial losses in the previous year but that they would nonetheless "put Speed out of business" if it did not undertake operation of a dual franchise. Upon its rejection of the offer to take over the Kings Plaza point on these terms, plaintiff contends that defendants began to sell Jeeps at Kings Plaza at prices substantially below that which Speed was obliged to charge and have maintained an adequate supply of Jeeps to the Kings Plaza facility while failing to provide Speed directly with the number of vehicles it requires for sale.

### Motion to Dismiss

■ The issue to be decided on this motion is not whether plaintiff will ultimately prevail in the action, but whether it is entitled to proceed with discovery and offer evidence in support of its claim. *Green v. Hamilton Intern. Corp.,* 437 F.Supp. 723 (S.D.N.Y.1977). It is also the rule in this circuit that a complaint need only give notice to the opposing party by a short, plain statement for relief, in anti-

trust cases as in all cases under the Federal Rules. *George C. Frey Ready-Mixed Con. v. Pine Hill C. M.,* 554 F.2d 551, 554 (2 Cir. 1977). See *Nagler v. Admiral Corporation,* 248 F.2d 319 (2d Cir. 1957). Thus, it is unnecessary to plead evidence or the facts upon which the claims are based. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 446 (3 Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Dismissal is appropriate only where, after the court has taken all well-pleaded material allegations as true, it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). See *Gumer v. Shearson, Hamill & Co., Inc.,* 516 F.2d 283, 286 (2 Cir. 1974).

### (a) *Antitrust Claims*

■ To the extent that plaintiff seeks to press a claim under section 1 of the Sherman Act, the complaint fails to meet the minimum required under federal pleading rules and thus is dismissed. Section 1 forbids, and requires allegations of (1) a conspiracy, combination or contract that is (2) an undue restraint of trade. *House of Materials, Inc. v. Simplicity Pattern Co.,* 298 F.2d 867, 870 (2 Cir. 1962); *Diehl & Sons, Inc. v. International Harvester Co.,* 426 F.Supp. 110, 116 (E.D.N.Y.1976). The complaint simply fails to make such allegations.

■ Under the most favorable interpretation of the complaint, moreover, the existence of a co-conspirator could not be shown. Although a parent corporation and its subsidiary may in certain circumstances constitute independent co-conspirators for section 1 purposes, see *Timken Roller Bearing Co. v. United States,* 341 U.S. 593, 597, 71 S.Ct. 971, 95 L.Ed. 1199 (1951); *Kiefer-Stewart Co. v. Seagram & Sons Co.,* 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951); *United States v. Yellow Cab Co.,* 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947); *Diehl & Sons, Inc. v. International Harvester Co., supra,* 426 F.Supp. at 116, there is no logical basis or foundation in the allegations of the complaint for a finding here of an anticompetitive conspiracy between AMC and its wholly-owned subsidiary AMC Sales to drive plaintiff out of the Jeep market. The fallacy in such a contention is that AMC could, apart from contractual obligations, unilaterally deprive Speed of AMC products and thereby increase its own share of the market without anti-trust significance. See *Diehl & Sons, Inc. v. International Harvester Co., supra,* 426 F.Supp. at 117. Further, plaintiff's vague allegation of a "tied product" adds little to the section 1 claim. First, plaintiff can hardly claim injury to its business or property from any alleged tie of continued supply of Jeeps to operation of the Kings Plaza point. Simply put, Speed resisted defendants' entreaties and continues to sell Jeeps supplied to it by defendants, notwithstanding its allegations of slow delivery, and thus can claim no injury. Second, plaintiff concedes, as it must, that it does not have an exclusive franchise to sell Jeeps in the area; there are other dealers as well. Read generously, the complaint alleges a prospective or constructive termination, and on such allegations, the court cannot conclude that defendants' lawful decision to place a competing dealership in the area runs afoul of the antitrust laws since "the purpose of the Sherman Act is to protect competition, not competitors." *Checker Motors Corp. v. Chrysler Corp.,* 283 F.Supp. 876, 885 (S.D.N.Y.1968), *aff'd,* 405 F.2d 319 (2 Cir.), *cert. denied,* 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969), cited in *Diehl & Sons, Inc. v. International Harvester Co., supra,* 426 F.Supp. at 119. See *Kapiolani Motors, Ltd. v. General Motors Corporation,* 300 F.Supp. 784 (D.Hawaii 1969). It is apparent then that plaintiff has not and indeed in the court's view, cannot plead a section 1 conspiracy or combination sufficient to withstand a motion to dismiss.

■ Plaintiff's section 2 monopoly claim fares little better. Its theory presumably is that AMC, through its competing sales branches, is attempting to monopolize and monopolizes the sale of Jeeps in the area (Amended Complaint ¶ 5). Although it is true, as plaintiff contends, that early dis-

missals are not favored in actions alleging violations of the antitrust laws, "bare bones statements of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal." *Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98, 100 (2 Cir. 1972); *Car-Freshner Corp. v. Auto Aid Mfg. Corp.*, 438 F.Supp. 82, 86 (N.D.N.Y.1977).

Even under the narrowest definition of the relevant geographic and product market—elements which must be satisfied to make out a violation of section 2 of the Sherman Act, *Walker Process Equipment, Inc. v. Food Machine & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965) —plaintiff's claim is not sustainable. Plaintiff is a franchisee selling defendants' products, and "[e]very manufacturer has a natural and complete monopoly over his particular product, especially when sold under his own private brand or trade name." *Schwing Motor Co. v. Hudson Sales Corp.*, 138 F.Supp. 899, 902 (D.Md.), *aff'd*, 239 F.2d 176 (4 Cir. 1956), *cert. denied*, 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38 (1957). The ultimate control of the distribution and sale of a product is also within the discretion of the manufacturer; it is the prerogative of the manufacturer to decide with whom it will deal, *Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 133 (2 Cir. 1978), *cert. denied*, 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338, *reh. denied*, 439 U.S. 1104, 99 S.Ct. 883, 59 L.Ed.2d 65 (1979), and "a manufacturer may change its strategy, franchising new dealers or substituting new dealers for less productive old ones," *Cernuto, Inc. v. United Cabinet Corp.*, 595 F.2d 164, 167 (3 Cir. 1979), without violating the provisions of the Sherman Act. Therefore, defendants' control of the sale of Jeeps, particularly in view of the non-exclusive franchise agreement between AMC and Speed, can have no anticompetitive effect. Nor do any acts of defendants constitute an attempt to monopolize.

Additionally, the court is of opinion that a finding of no anticompetitive effect from defendants' conduct is further supported by plaintiff's failure to point to any injury resulting therefrom and permits dismissal mindful as we are "lest the Sherman Act be invoked perversely in favor of those who seek protection against the rigors of competition." *Berkey Photo Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 273 (2 Cir. 1979), citing *Buffalo Courier-Express Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 55 (2 Cir. 1979). Specifically, the complaint fails to allege injury from defendants' purported attempt to integrate vertically the manufacture and sale of Jeeps. Plaintiff continues to sell Jeeps under franchise uninhibited by defendants, notwithstanding its claim that *for the past few years*—before the events leading to this action occurred—defendants have allegedly been unable to supply plaintiff with the number of Jeeps it claims it needs. Plaintiff does not claim that its allotment of vehicles has been cut back in retaliation for its refusal to take over the AMC franchise. Rather, it contends its allotment is insufficient and thus it must go into the open market for Jeeps to obtain a satisfactory supply. While it must be assumed that the factory-operated Kings Plaza AMC receives sufficient Jeeps as plaintiff contends, we believe neither this fact nor the "built-in" price advantage enjoyed by Kings Plaza in the sale of Jeeps adds support to a claim of monopolization, where there is no allegation that plaintiff's "competitive disadvantage" operates to the detriment of competition.

Nor does plaintiff claim that defendants have in any other manner encumbered the operation of its franchise so as to fall within the prohibitions of the antitrust laws. Defendants have not, for example, imposed a condition that plaintiff sell Jeeps exclusively. Plaintiff could, if it so desired, sell other brands of vehicles with its Jeep franchise, unless otherwise agreed to by contract. Thus, it is difficult to view the allegations of the complaint as suggesting a true tying arrangement resulting in defendants' utilization of its power in a Jeep market, assuming one exists, to restrain trade in the passenger vehicle market. *Cf. Berkey Photo Inc. v. Eastman Kodak Co., supra*, at 275–76. Simply put, it is very much in defendants' interest to have plaintiff

continue to sell as many Jeeps as possible. Nothing in the amended complaint suggests defendants' conduct with respect to plaintiff's Jeep franchise is violative of the antitrust laws.

(b) *Dealer-Day-In-Court Act*

■ Plaintiff does, however, state a claim under the DDICA which cannot be dismissed at this time. The statute requires a wrongful demand enforced by threats of coercion. 15 U.S.C. § 1221(e). See *Diehl & Sons, Inc. v. International Harvester Co., supra,* 426 F.Supp. at 124. See also *Marquis v. Chrysler Corp.,* 577 F.2d 624, 633 (9 Cir. 1978). Here, the complaint adequately sets forth specific allegations, which if proved at trial would permit a trier of fact to find that a wrongful demand enforced by threats to put plaintiff out of business was made by defendants. Therefore, a claim is stated notwithstanding defendants' argument that the so-called "threat" occurred too long ago to be considered serious. It is for the trier of fact to decide whether defendants engaged in conduct to coerce plaintiff improperly within the meaning of the Act.

We do not intend to imply by this that defendants' action in placing a competing Jeep dealer near Speed was in any manner unlawful. To the contrary, the legislative history of the DDICA reveals that

> "[e]very action which reduces the dealers' equity does not give rise to a cause of action under the bill . . . the establishment of a new dealership by the factory, thus providing more competition to the dealer, would not give the dealer a right of action under this bill."

Hearings on H.R. 11360 and S. 3879, 84th Cong.2d Sess. at p. 27 (1956). Although defendants' conduct with respect to supplying sufficient automobiles to plaintiff does not, as currently alleged, implicate antitrust principles, it might serve to support a claim under the DDICA and therefore this claim must be left to further discovery.

(c) *State Law Claims*

■ Moreover, while plaintiff's State law claims are hardly well pleaded and may suffer technical pleadings defects, they do suggest that plaintiff is operating as a franchise and has been harmed by defendants' conduct. Under federal notice pleading, it is unnecessary to set out the legal theory upon which a claim is based. *Siegelman v. Cunard White Star,* 221 F.2d 189, 196 (2 Cir. 1955); *Gins v. Mauser Plumbing Supply Co.,* 148 F.2d 974 (2 Cir. 1945). See *Hitchcock v. deBruyne,* 377 F.Supp. 1403, 1407 (D.Conn. 1974). Thus, while it is desirable that the pleadings give notice of some theory supporting recovery, it is unnecessary for the pleader to delineate the theories or to choose among alternative theories of relief.

Here, in separate counts, plaintiff alleges that defendants' conduct breached their franchise agreement, constitutes fraud and deceit and unfair competition and breached various fiduciary duties. We do not believe—given the court's view that harm that may be redressable under State law has been sufficiently alleged—that it is productive of the court's time, in view of the inadequate factual basis for the attack on these various theories of recovery, to prune the complaint to a single theory at this time. Once a factual basis has been fully developed, the State law claims which are cognizable under diversity jurisdiction can be disposed of in further pre-trial proceedings.

(d) *New York General Business Law §§ 197, 197a and 198*

■ Plaintiff's allegation of a violation of New York General Business Law cannot, however, be supported. In pertinent part, sections 197 and 197a state:

> "No manufacturer or distributor . . . shall *terminate* any contract, agreement, or understanding or renewal thereof for the sale of new motor vehicles to a distributor or dealer . . . except for cause. [§ 197]
>
> "No manufacturer or distributor shall . . . *fail or refuse to renew* any contract, agreement, or understanding for the sale of new motor vehicles to a distributor or dealer . . . except in good faith." [§ 197a] (Emphasis added.)

Since the complaint fails to allege that Speed has been terminated or that defendants have failed or refuse to renew an existing contract with its franchisee, no claim is stated under the law. *Staten Island Motors, Inc. v. American Motors Sales Corp.*, 169 F.Supp. 378, 381 (D.N.J.1959).

■ Nor do we believe that the allegations of the complaint provide a sufficient basis for broadening the scope of the law to include a claim of constructive termination. Even were such a theory cognizable under New York law, plaintiff claims not that defendants' competition at Kings Plaza has caused him lost business but that he has been unable to obtain a sufficient supply of Jeeps through defendants to satisfy his customers' demands. While such a claim might well, as suggested above, support plaintiff's allegations of violation of his franchise agreement under State law or the DDICA, it hardly supports a claim of constructive termination. Plaintiff does not contend, moreover, that the shortage of Jeeps, which has existed for at least two years and has apparently preceded the events leading to this suit, is causing a constructive termination of his franchise. In these circumstances, such a claim is hardly weighty.

### Motion For Preliminary Injunction

The standard for injunctive relief in this circuit has been recently restated in a series of cases which are dispositive of plaintiff's motion. In *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2 Cir. 1979), the court called for a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting relief." *Id.* at 72, *citing Caulfield v. Board of Education*, 583 F.2d 605, 610 (2 Cir. 1978); *New York v. Nuclear Regulatory Commission*, 550 F.2d 745, 750, 755 (2 Cir. 1977); *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1358–59 (2 Cir. 1976). See also *Buffalo Courier-Express Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48 (2 Cir. 1979). Jackson Dairy was the exclusive distributor of H.P. Hood & Sons' products under a contract in a northeast territory. The complaint alleged that H.P. Hood breached the exclusive distributorship by selling certain products directly to two large chain store customers outside Jackson's territory "knowing that they . . . [were] being purchased for trans shipment to retail establishments within Jackson's exclusive sales territory." 596 F.2d at 71. The Court of Appeals reversed the granting of a preliminary injunction since "it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation," 596 F.2d at 72, and the complaint simply failed to demonstrate any likelihood that money would not be adequate compensation.

■ The Court of Appeals has even more recently adhered to this rationale in a private treble-damage antitrust suit under facts far more compelling than those presented here. In *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755 (2 Cir. 1979), the court stated that, notwithstanding defendants' termination of plaintiff's dealership contract, "the injuries that it will incur on termination of its Baldwin dealership are in every sense ordinary and are compensable in light of the liberal rules for proving damages in antitrust cases." *Id.* at 4032. This court is of opinion that these comments are wholly applicable here even though the antitrust claims have been dismissed, and that the complete absence of any colorable allegation of harm not compensable in monetary damages is fatal to plaintiff's motion. See *P. J. Grady v. General Motors Corp.*, 472 F.Supp. 35 (E.D.N.Y.1979).

Accordingly, plaintiff's motion for a preliminary injunction is denied. Defendants' motion to dismiss the amended complaint is granted with respect to claims "First" and "Seventh" and denied with respect to claims "Second" through "Sixth" to the extent outlined above.

SO ORDERED.