**Martin Bertram WALNER**

v.

**BASKIN–ROBBINS ICE CREAM COMPANY, Baskin-Robbins, Inc., 31 Flavors Stores Realty, Inc.**

**Civ. A. No. 4–78–339K.**

United States District Court,
N. D. Texas,
Fort Worth Division.

May 14, 1981.

Denning Schattman, Fort Worth, Tex., for plaintiff.

David F. Chappell, Hooper & Chappell, Fort Worth, Tex., for defendants.

## MEMORANDUM OPINION

BELEW, District Judge.

Plaintiff seeks relief and bases jurisdiction on Section One of the Sherman Anti-Trust Act, 15 U.S.C. § 1 *et seq.* (1975), and under Texas Common Law for interference with a contract.

In 1976, Plaintiff Walner purchased a franchise from Defendant Baskin-Robbins, Inc. in Fort Worth, Texas for approximately $78,000.00, and leased the ice cream parlor from Defendant 31 Flavors, Inc. Both the franchise and the lease contained appropriate standard language requiring approval by the respective Defendants for transfer of the franchise or lease to the third party.

Walner alleged that in 1978 he entered into a contract to sell the franchise and assign the lease to Saebo and Hugasi Garapet, subject to the approval of Baskin-Robbins, Inc. and 31 Flavors, Inc., for $110,-000.00. Walner further alleged the Defendants refused to permit the assignment because the price was allegedly excessive, hence damaging Plaintiff by the difference between the original purchase price of 1976 and the rejected sale price of 1978.

Defendants denied the existence of any contract to transfer the franchise and lease to the Garapets, and their refusal to approve such a transfer. However, they did contend if the alleged facts were true, such would not constitute a restraint to trade under the Sherman Act, nor an interference with the contract under Texas Common Law.

At the close of Plaintiff's case, Defendants moved for judgment, which the Court hereby grants.

## SHERMAN ACT COUNT

Section One of the Sherman Act prohibits contracts, combinations, or conspiracies in restraint of trade. 15 U.S.C. § 1 *et seq.* (1975). Certain types of agreements are so manifestly anti-competitive they are considered "per se" violations of the Act, without even an ad hoc analysis of the reasonableness of the alleged agreement. *See, e. g., Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 50, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568, (1977); *Northern Pac. R. Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Here, Plaintiffs

do not contend the written contracts in question or the Defendant's conduct constitute per se violations. Case law indicates there is nothing inherently evil in the franchisor retaining the right to approve a resale of the franchise. *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 697 (5th Cir. 1975), *cert. denied* 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976).

■ Accordingly, the Plaintiff must prove his cause of action under the "rule of reason," if he is to prevail under any anti-trust theory. *Kestenbaum, supra*, 514 F.2d at 696. It is this Court's opinion the Plaintiff has failed to adequately raise an inference of anti-trust activity.

Baskin-Robbins' exercise of its right to approve a transfer of a franchise is merely an illustration of a seller's legitimate right to select its customers and its right to refuse to sell its goods to anyone, for reasons sufficient to itself. *United States v. Colgate & Company*, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919); *Aladdin Oil Co. v. Texaco, Inc.*, 603 F.2d 1107, 1113 (5th Cir. 1979); *Kestenbaum, supra*, 514 F.2d at 696.

In fact, the Courts repeatedly have held "approval of transfer" clauses not only are protected by *Colgate*, but actually serve legitimate business purposes (*i. e.*, not "unreasonable restraints of trade"). In *Kestenbaum, supra*, a franchisee sought Sherman § 1 relief because Falstaff had refused to approve a sale of Plaintiff's franchise for the reason it felt the price was excessive. The Court held Falstaff's actions to be consistent with its obligations to protect its trademark and new franchisees.

"It logically follows that Falstaff has a right to restrict the sales price of one of its distributorship franchises to the reasonable value of that franchise in order to insure that the purchaser will have a chance to realize a reasonable return on his investment. Falstaff clearly has a strong interest in the financial vitality of a new franchisee. If the purchaser of a franchise makes a bad bargain when he buys, then he cannot give the distributorship the solid, concerned management

which it must have to be successful for him and to enhance Falstaff's image and relative position in the market." *Kestenbaum, supra*. 514 F.2d at 696.

The identical situation is present in this case. Baskin-Robbins possesses the right to protect its trademark and image; certainly it must be able to insure a new franchisee possesses a reasonable economic opportunity to succeed.

It is the duty of this Court to examine the totality of the circumstances to determine if an otherwise legal activity, i. e., the right to unilaterally approve a franchise transfer, has been used as part of an overall scheme to achieve an illegal and anti-competitive goal, such as an attempt to achieve a monopoly, fixed prices or boycott. *Aladdin Oil Co. v. Texaco, Inc., supra*, 603 F.2d at 1115. In such a context, the Court should not find the specific practice wrongful, but rather, the overall scheme as wrongful. No evidence of such an overall scheme exists here. Quite the contrary, the evidence is that Baskin-Robbins acted within the confines of good faith and legality.

In addition, Plaintiff failed to demonstrate other requisites of an anti-trust case. No evidence of relevant market, *Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.2d 256, 276 (5th Cir. 1978), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *Gough v. Rossmoor Corp.*, 585 F.2d 381, 389 (9th Cir. 1978), *cert. denied*, 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979), nor conspiracy were presented. *Knutson v. Daily Review, Inc.*, 548 F.2d 795, 802 (9th Cir. 1976) *cert. denied* 433 U.S. 910, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977).

Moreover, Plaintiff wholly failed to demonstrate an adverse effect on interbrand competition in the retail ice cream market. Under the "rule of reason" cause of action, injury to the Plaintiff, had it been demonstrated in this case, would not have been adequate. *See: Kestenbaum, supra*, 514 F.2d at 699–700.

## INTERFERENCE WITH CONTRACT

As an alternative diversity of citizenship claim, Plaintiff alleges the Defendants' al-

leged refusal to permit the transfer of the franchise and lease constituted a tortious interference with the contract under Texas Common Law. It is not necessary, however, to reach a factual determination of whether an oral contract of sale existed between Walner and the Garapets, for as a matter of law, the Plaintiff failed to establish the Defendants' alleged actions constituted an interference with the contract.

 Under Texas law the elements of interference with a contract require,

... "(1) there was a contract subject to interference, (2) the act of interference was wilful and intentional, (3) such intentional act was a proximate cause of Plaintiff's damage and, (4) actual damage or loss occurred." *Armendariz v. Mora*, 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

Additionally, for liability to attach, the acts taken by the Defendants must have been without right or justification. *Black Lake Pipeline Co. v. Union Construction Co.*, 538 S.W.2d 80, 91 (Tex.1976).

■ Although the evidence indicates the Defendants' district representatives in Dallas were concerned about the proposed selling price, it is undisputed that approval or disapproval had to come from corporate headquarters in California. Plaintiff failed to establish not only an inference of an interference, but furthermore, a wilful and malicious interference.

Second, the franchise expressly requires the approval of Baskin-Robbins before a contract of transfer could be completed. By definition, interference does not exist if the alleged interferer had the legal right to perform the action complained of. *See: id.* In other words, Baskin-Robbins' approval was a condition precedent to the existence of a contract of sale, and disapproval would not be considered interference.

■ Once it is established that Baskin-Robbins possessed the contractual right to disapprove a transfer, contract law permits Baskin-Robbins to exercise that right without regard to good will or motive. *Davis v. Lewis*, 487 S.W.2d 411, 414 (Tex.Civ.App.—Amarillo 1972, no writ).

For these reasons, the Court finds that Plaintiff has failed to establish a cause of action against these Defendants and the case should be dismissed.

IT IS SO ORDERED.