**SIMONDS CHEVROLET, INC., Plaintiff,**

v.

**GENERAL MOTORS CORP., Defendant.**

**Civ. A. No. 79–927–N.**

United States District Court,
D. Massachusetts.

April 21, 1983.

---

Paul Adams, Brockton, Mass., for plaintiff.

Daniel L. Goldberg, Bingham, Dana & Gould, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

The sole issue here is whether the defendant General Motors Corporation (GM) unreasonably withheld its consent to a proposed transfer of plaintiff's automobile dealership to a prospective purchaser. Having reviewed the parties' submissions and entertained argument by counsel, the court is persuaded that no material facts are in dispute and that plaintiff's contentions are without legal merit. Accordingly, GM's motion for summary judgment will be allowed.

The undisputed facts reveal that, beginning in 1964, plaintiff Simonds Chevrolet, Inc. (Simonds) owned and operated a Chevrolet dealership located in Stoughton, Massachusetts. Its arrangement with GM, the manufacturer of Chevrolet automobiles, was governed by a standard Dealer Sales and Service Agreement which the parties periodically renewed. Under this contract, Simonds was free to sell the dealership assets but unable to assign the franchise itself; any purchaser interested in assuming the Chevrolet franchise was required to secure GM's approval. In December 1975 Simonds began to explore the possible sale of its dealership, due in part to continued financial difficulties. It notified GM of this fact and commenced negotiations with various prospective purchasers, some of whom had been referred by GM. Eventually, on January 4, 1977, Simonds completed a transfer of the franchise, with GM's approval, to Allen and David Polivy, co-owners until that time of an Oldsmobile dealership in Framingham. The present dispute concerns GM's earlier refusal to approve as successor dealers William and Victor Dino, the co-owners of a Buick dealership in Stoughton, with whom Simonds had reached a purchase and sale agreement in January 1976 contingent upon GM's approval. Contending that a sale to the Dinos would have yielded a larger profit than that ultimately received from the Polivys, Simonds filed the present action alleging that GM had unreasonably withheld its consent to the Dino proposal in violation of Mass. G.L. c. 93B, § 4(3)(i). This provision, part of a statute regulating business practices between automobile manufacturers, distributors and dealers, commands in relevant part: "There shall be no assignment, delegation or transfer of the franchise or management or control thereunder without the written consent of the manufacturer, distributor or wholesaler, *which consent will not unreasonably be withheld.*" *Id.* (emphasis added). A companion claim brought under Mass.G.L. c. 93A was earlier dismissed by this court pursuant to *Reiter Oldsmobile, Inc. v. General Motors Corp.,* 378 Mass. 707, 393 N.E.2d 376 (1979).

In response to the chapter 93B claim, GM has advanced four independent justifications for its rejection of the Dino application. Because plaintiff has not challenged,

and the record otherwise supports, the factual underpinnings for these various explanations, they can be briefly summarized. First, the Dinos never evidenced a willingness or ability to provide adequate working capital for the Chevrolet dealership—a concern compounded by the fact that their smaller Buick dealership had consistently been undercapitalized. Second, Dino Buick's sales performance had generally been substandard; for the four years immediately preceding the proposed sale, for example, Buick management had sent the Dinos written evaluations characterizing their performance as ineffective and calling for improvement. Third, the Dinos proposed a "dual" Chevrolet/Buick dealership, a proposal that would have involved overlapping ownership or management between the two GM lines. GM had determined, however, that a dual dealership in Stoughton would be undesirable for business reasons, and the Dinos never evinced a willingness to relinquish their ownership and management of Dino Buick. (By contrast, the Polivys, the ultimate purchasers of Simonds' dealership, agreed to sever all ties with their Framingham dealership.) Finally, the Dinos' joint application to become Chevrolet dealers was incomplete, omitting information that GM needed to evaluate their proposal properly.

Plaintiff also lodges no challenge to the legal sufficiency of these various factors under G.L. c. 93B, § 4(3)(i) as justifications for the withholding of consent to the proposed sale. Any such challenge would be fruitless, for it is apparent that the four cited explanations—in conjunction, if not separately as GM argues—provide clearly sufficient grounds for such action. Although the Massachusetts courts have yet to construe chapter 93B's reasonableness requirement, analogous case law indicates that the existence of genuine doubts as to a prospective dealer's business acumen and financial capabilities, when combined with a "dualing" proposal that is justifiably disfavored by the manufacturer, furnishes ample justification for the withholding of consent. *See, e.g., Pierce Ford Sales, Inc. v. Ford Motor Co.,* 299 F.2d 425, 430 (2d Cir.1962); *Walner v. Baskin-Robbins Ice Cream Co.,* 514 F.Supp. 1028, 1030 (N.D.Tex.1981); *P.J. Grady, Inc. v. General Motors Corp.,* 472 F.Supp. 35, 37–38 (E.D.N.Y.1979).

Rather than contesting the factual accuracy or legal sufficiency of these proffered justifications, Simonds contends that, whatever hypothetical weight they might carry, they played no role in GM's rejection of the Dino application. According to this theory, GM's intention from the outset was to combine the Chevrolet dealership in Stoughton with another in nearby Canton which was also financially troubled, thereby creating one larger—and hopefully solvent—dealership for the combined area. Far from having been reached in good faith, therefore, GM's decision to reject the Dino proposal is said to have been predetermined and its proffered reasons pretextual. This allegation falls short. Even were it adequate to make out a chapter 93B violation, plaintiff has failed to buttress it with sufficient facts to defeat a summary judgment award.

Fed.R.Civ.P. 56(e) provides that a party opposing a properly "supported" motion for summary judgment "may not rest upon the mere allegations or denials of his pleading" but must "set forth specific facts showing that there is a genuine issue for trial." And to create such a triable issue of fact, the "evidence manifesting the dispute must be 'substantial,'" *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), *quoting Fireman's Mutual Ins. Co. v. Aponaug Manuf. Co.,* 149 F.2d 359, 362 (5th Cir.1945), rather than consisting simply of "unsupported assertions more appropriately confined to the pleadings." *Over the Road Drivers, Inc. v. Transport Ins. Co.,* 637 F.2d 816, 819 (1st Cir.1980). Even with the record construed in the light most favorable to Simonds and with all inferences indulged in its favor, *e.g., Hahn v. Sargent,* 523 F.2d at 464, its allegations fail to meet this standard.

At best, Simonds' admissible evidence in support of its theory establishes the following two propositions: (1) that GM withheld consent to any transfer for some two months while investigating the possibility

of combining the Stoughton and Canton dealerships; and (2) that GM decided, at least on a preliminary basis, to reject the Dinos' application during this period. It should be noted initially that the first-cited action was by no means unwarranted; GM not only had reserved the right in the dealership agreement to discontinue the franchise upon Simonds' termination, but had advised Simonds by letter dated December 15, 1975 of its intention to "review and confirm . . . our plans for continued dealership representation" in Stoughton. More important, there is no evidence that the two cited actions were in any way connected, i.e., that the Dinos' rejection resulted from GM's interest in the Canton dealership. Simonds' sole evidence consists of a remark by a GM official on February 11, 1976 that "Chevrolet had not done anything with Dinos' application as Chevrolet didn't want Dino as a Chevrolet dealer." Nothing in this statement suggests that the rejection was premised on anything other than the merits of the Dinos' application, nor would any such inference be supportable in light of GM's uncontroverted proof discussed above. In addition, whatever consideration was given to a combined Stoughton-Canton dealership ceased no later than February 27, 1976 when GM management approved the Stoughton location "for continuation as Chevrolet single-line representation." It is undisputed, however, that the Dinos remained under consideration for the dealership after that date; GM rejected their application on March 5, 1976 and thereafter entertained a renewed application, and as late as November 30, 1976 it informed the Dinos that they were not the "primary candidate." These various considerations compel the conclusion that GM's rejection of the Dinos' proposal rested on a solid footing and comported fully with chapter 93B.

Defendant's motion for summary judgment is ALLOWED.

SO ORDERED.