**UNIONVALE SALES LTD., Plaintiff,**

v.

**WORLD–WIDE VOLKSWAGEN CORP.,**
**Volkswagen of America, Inc., Affiliated**
**Financial Corp. and Arthur Stanton, De-**
**fendants.**

**No. 67 Civ. 157.**

United States District Court
S. D. New York.

June 3, 1969.

Wien, Lane, Klein & Malkin, New York City, for plaintiff; James M. Malloy, of counsel.

Mervin Rosenman, New York City, for defendant World-Wide Volkswagen Corp.

## MEMORANDUM

POLLACK, District Judge.

The defendant World-Wide Volkswagen Corp. (the "defendant" hereafter), moves for summary judgment in its favor dismissing Count One of the complaint under Rule 56, Fed.R.Civ.P.

Plaintiff, an ex-Volkswagen dealer, sues the moving defendant, its wholesale distributor, for damages claimed for alleged wrongful termination of the dealership.* The suit is brought under the Dealer's Day in Court Act, enacted in 1956, 15 U.S.C. §§ 1221–1225. To sustain this statutory claim, the plaintiff must show that the defendant wrongfully terminated the plaintiff's franchise as an automobile dealer or otherwise failed to perform the provisions of the franchise in good faith. The term "good faith" is expressly defined in the statute, 15 U.S.C. § 1221(e), as "the duty of each party * * * to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party * * *."

The conduct complained of herein is the defendant's purported demand that plaintiff remove its dealership facilities from La Grangeville, 12 miles outside of Poughkeepsie, to a presumably more suitable location closer to the Poughkeepsie market under alleged threat to put a second dealer in the Poughkeepsie area. The matter of the projected relocation consumed more than a year of discussion, planning and ineffectual proposals; and defendant became increasingly impatient with plaintiff's fruitless attempts to make realistic arrangements to accomplish the desired end.

It was in these circumstances that defendant discovered in the course of a routine car check that, in breach of its trust obligation under the arrangements for financing car sales, the plaintiff had failed to turn over to the defendant's finance company between $39,000 and $46,000 representing the proceeds of approximately 26 cars sold which, under the financing agreement, plaintiff had received in trust. The arrangement was that the finance company purchased the cars for the dealer from the wholesale distributor and the dealer held these cars "in trust" for the finance company until sold and was obligated to hold the proceeds of sales "in trust" and to turn over therefrom to the finance company the wholesale price of the cars sold plus the financing charges.

On learning of the breach, the defendant, allegedly without investigating further or waiting for explanations, wired the plaintiff that "Due to your being out of trust to the extent of approximately forty thousand dollars ($40,000), thereby impairing the financial standing of dealer, pursuant to Article 12(1) (h) of your dealer agreement the undersigned terminates your dealer agreement for cause effective immediately."

The plaintiff contends that defendant terminated its dealership unfairly and inequitably as part of its dissatisfaction with the progress of the relocation matter. The plaintiff also suggests that to compel it to relocate was at all events unfair and inconsistent with assurances given to it when La Grangeville was originally set up as the dealership location.

The defendant contends that it did not in fact terminate the dealership at all, but that the notice was sent merely "as a warning or a rapping across the knuckles" in order to bring home to plaintiff that the situation was consid-

---

* Orders previously entered herein dismiss all claims herein except Count I as against the moving defendant. None of the prior dismissals foreclose the issue on the motion now being decided.

ered to be very serious. Apparently, the defendant contends that plaintiff decided to go out of business when advised that a second dealership would be established in the Poughkeepsie area. According to defendant, it was for that reason that plaintiff determined to sell out its dealership and did so to a purchaser, supplied by the defendant, which acquired the property temporarily and later turned it over to a permanent purchaser without profit or loss.

The motivations and purposes of the parties, as presented on these papers, are unclear and disputed. Indeed, some of the defendant's contentions, to say the least, appear paradoxical—particularly as to the true intent of the termination telegram.

■ The Act imposes no obligation to preserve a dealership found to be "out of trust" in its financial dealings. The plaintiff's papers suggest that this was condoned by a course of dealing to that effect by the parties. Such a course of dealing is disputed.

Similarly, a demand to relocate dealership facilities to more effectively sell and service cars would hardly seem, on the face of it, to be the kind of wrongful demand required as an essential element of coercion. Nor does the threat of a second and more appropriately located dealership in the marketing area, on the face of it, appear to constitute a wrongful threat under the Act. Yet, here again, there are factual disputes between the parties as to the acts, purposes and good faith involved.

■ Dealers, absent coercion and wrongful demands, are not protected by the Act against "arbitrary" business decisions in respect of relocation or termination of the dealership. Pierce Ford Sales, Inc. v. Ford Motor Co., 299 F.2d 425 (2d Cir. 1962); Berry Bros. Buick, Inc. v. General Motors Corp., 257 F.Supp. 542 (E.D.Pa.1966), aff'd 377 F.2d 552 (3d Cir. 1967).

■ However, skepticism of the merit of a claim is not enough to support the granting of summary judgment where the underlying facts are controverted and in doubt and may be illumined by inquiry into purposes, motives and credibility.

The defendant's motion is, accordingly, denied.

So ordered.