R. A. C. MOTORS, INC., a New Jersey Corporation, Plymouth Realty Co., a New Jersey Corporation, Charles A. Abruscato, Grace Abruscato and Norman Abruscato, Plaintiffs,

v.

WORLD–WIDE VOLKSWAGEN CORP., a New York Corporation, Volkswagenwerk Aktiengesellschaft, a German Corporation, and Volkswagen of America, Inc., a New Jersey Corporation, Defendants.

Civ. No. 211–68.

United States District Court,
D. New Jersey,
Civil Division.

June 3, 1970.

Krivit & Krivit, by Spencer N. Miller, Jersey City, N. J., for plaintiffs.

Cerreto & La Penna, Newark, N. J., for defendants World-Wide Volkswagen Corp.; Mervin Rosenman, New York City, by Simon J. Hauser, New York City, of counsel.

Crummy & O'Neill, Newark, N. J., for defendants Volkswagen of America, Inc., and Volkswagenwerk Aktiengesellschaft; Herzfeld & Rubin, by Herbert Rubin, New York City, of counsel.

OPINION

COOLAHAN, District Judge.

This is an action brought under the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221 et seq. Plaintiff R.A.C. Motors, Inc., (hereinafter "R.A.C.") is a New Jersey corporation doing business as a retail automobile dealer in West New York, New Jersey.[1] Defendant World-Wide Volkswagen Corp. (hereinafter "World-Wide") is the authorized wholesale distributor for Volkswagen automobiles in New Jersey. Beginning in 1960 and annually thereafter until 1967, R.A.C. held yearly Dealer Franchise Agreements with World-Wide for the sale of Volkswagens. In 1968 World-Wide notified R.A.C. that it would not renew R.A.C.'s Volkswagen franchise; R.A.C. then initiated this suit seeking damages allegedly sustained because its dealership was not renewed.

The plaintiffs applied for a preliminary injunction shortly after the commencement of this action. They sought to have the defendants enjoined from ceasing to supply R.A.C. with Volkswagens and Volkswagen parts. This application was denied after a two day trial at which a full evidentiary hearing was held. Subsequently, a motion by World-Wide to enjoin R.A.C. from displaying signs bearing the name, trademark or logo of Volkswagen, or to otherwise hold itself out as an authorized Volkswagen dealer, was granted. This matter is again before this court on defendants' motions for summary judgment.

The plaintiffs allege in their complaint that the defendants violated the Automobile Dealers' Day in Court Act by refusing to renew R.A.C.'s Volkswagen franchise because R.A.C. had also obtained a Volvo franchise. They contend that prior to the opening of R.A.C.'s Volvo franchise there existed a harmon-

1. Plaintiff Plymouth Realty Co. is a New Jersey corporation which owns the premises at which R.A.C. Motors operates its automobile dealership. Plymouth has no direct dealings with any of the defend- ants. Plaintiffs Charles Abruscato, Grace Abruscato and Norman Abruscato are the beneficial owners of both R.A.C. Motors and Plymouth Realty.

ious business relationship between R.A.C. and World-Wide. Approximately one year before this action was begun, another Volkswagen dealership was opened about four and one-half miles from R.A.C.'s place of business. The plaintiffs contend that R.A.C. obtained the Volvo franchise to compensate for the economic loss it suffered as a result of competition from the new Volkswagen dealer. Soon after the Volvo franchise was opened, plaintiffs allege that World-Wide began to purposely harass and intimidate R.A.C. with groundless complaints and exaggerated problems. The purpose of World-Wide's conduct, the plaintiffs claim, was to create a smokescreen to hide World-Wide's true intentions: to get R.A.C. to either drop the Volvo franchise or to create a record against R.A.C. to justify the non-renewal of the franchise.

An abundance of evidence has been presented to this court by way of affidavits and depositions, and also by testimony produced during the two day trial on plaintiffs' application for a preliminary injunction. This evidence paints a picture far different from the one described by plaintiffs in their complaint. Plaintiffs claim that World-Wide engaged in "fault finding" over "picayune matters." One such matter involved the submission by R.A.C. of untrue sales reports. The evidence indicates that during the period from May through August, 1967, R.A.C. submitted to World-Wide forty-four reports of vehicle sales allegedly made by R.A.C.

Subsequent investigation disclosed that the names and addresses of Volkswagen purchasers on forty-one of these reports were fictitious and that the signatures of these purchasers were forged. On three other reports the real name and address of the customer of the vehicle was given but the customer's signature was forged. In none of these forty-four cases were the vehicles sold by R.A.C. as the reports represented, but rather by other unauthorized Volkswagen automobile dealers.

The evidence also shows that R.A.C. submitted reports to World-Wide stating that it had performed a 300 mile free inspection on each of the forty-four vehicles referred to above. World-Wide reimbursed R.A.C. $5.85 for each of the forty-four inspections. Thus, R.A.C. received $257.40 for inspections which it now admits that it never performed.

The plaintiffs have advanced several arguments in an attempt to justify R.A.C.'s conduct. They claim that the fictitious names and addresses on the sales reports were unintentional mistakes. They also contend that since 300 mile inspections *may* have been performed by the (unauthorized) dealers who actually sold the forty-four vehicles, World-Wide was not being defrauded by the reimbursement to R.A.C. Needless to say, none of the plaintiffs' arguments are persuasive. R.A.C.'s conduct was designed to mislead World-Wide and clearly violated the franchise agreement.[2] Moreover, plaintiffs' conduct

---

2. Article 2 of the franchise agreement provides in part:
    (3) In the conduct of its business, Dealer shall:
      (a) Safeguard and promote the reputation of VW products and VW, VWoA and Distributor;
      (b) Refrain from all conduct which might be harmful to such reputation or to the marketing of VW products or inconsistent with the public interest; and
      (c) Avoid all discourteous, deceptive, misleading or unethical practices.
  Article 12 provides:
    (1) Distributor shall have the right at any time to bring about the prior termi-

nation of this agreement for cause. * * * The following events shall be considered sufficient cause, but they are enumerated in the Agreement only by way of illustration and not by way of limitation:
    *     *     *     *     *
    (h) Impairment of the reputation or of the financial standing of Dealer or of partners, stockholders or officers of Dealer subsequent to the execution of this Agreement. * * *
    *     *     *     *     *
    (j) Submission by Dealer of a false or fraudulent report or statement or of a false or fraudulent claim for reimbursement, refund or credit, including,

created a potential danger to the public. Information from the sales reports was transferred to IBM cards held by Volkswagen of America. In the event a defect was discovered in the Volkswagen, Volkswagen of America would be required under the Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1402, to give notice by certified mail to the customers whose names and addresses were on the IBM cards. Inasmuch as forty-one names and addresses submitted by R.A.C. were fictitious, the actual purchasers of these vehicles would never receive notification.

■■ The Automobile Dealers' Day in Court Act grants a dealer the right to sue in a federal district court for damages by reason of an automobile manufacturer's failure to act in "good faith" in terminating or not renewing a franchise.[3] The statute does not provide a new remedy for breach of contract but creates a new cause of action. An indispensable element of the statutory cause of action is not the lack of good faith in the ordinary sense but a lack of good faith in which "coercion, intimidation or threats" thereof are at least implicit. Globe Motors, Inc. v. Studebaker-Packard Corporation, 328 F.2d 645, 646 (3rd Cir. 1964).

■ The dealer has the burden of showing that it was a wrongful termination or non-renewal of the franchise. Milos v. Ford Motor Co., 317 F.2d 712, 718 (3rd Cir. 1963). The purpose of the Act is not to afford a guaranty against termination, much less failure to renew, but only to protect a dealer against coercion and intimidation amounting to a lack of good faith as defined by the Act. Absent coercion, dealers are not protected against "arbitrary" refusals to renew. If the manufacturer simply does not renew after a failure to communicate in any way with the dealer but after properly fulfilling its part of the agreement, it cannot be liable for failing to act in good faith. Berry Brothers Buick, Inc. v. General Motors Corp., 257 F.Supp. 542, 546 (E.D.Pa.1966). Of course, the manufacturer has no obligation to continue the franchise of an inefficient or undesirable dealer. Garvin v. American Motor Sales Corp., 318 F.2d 518 (3rd Cir. 1963).

Plaintiffs have come forward with no evidence whatsoever which would justify a finding that the failure to renew the franchise resulted from World-Wide's lack of good faith. Although they allege that their Volkswagen franchise was not renewed because R.A.C. had obtained a Volvo franchise, plaintiffs have produced no evidence to buttress their allegations. A fair reading of all the evidence before the court does not dis-

but not by way of limitation, a false or fraudulent warranty claim.

(k) Any substantial breach or violation of or default under any obligation of Dealer pursuant to this Agreement or in connection with any transaction between Distributor and Dealer contemplated herein, * * *.

3. 15 U.S.C. § 1222 provides:

An automobile may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer * * * to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: *Provided,* That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

In defining good faith, Section 1221 (definitions) specifies:

(e) The term "good faith" shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided,* That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

close one instance in which World-Wide indicated to R.A.C., either explicitly or implicitly, that the Volvo franchise should be dropped.

█ Therefore, even if this court disregarded R.A.C.'s own conduct, World-Wide's refusal to renew the franchise could only be considered "arbitrary" but lacking the elements of coercion or intimidation which give plaintiffs a cause of action under 15 U.S.C. § 1221 et seq. But World-Wide's refusal to renew certainly cannot be considered arbitrary in this case. R.A.C.'s conduct clearly violated the franchise agreement and R.A.C. admits not having made the forty-four vehicle inspections for which it was reimbursed $257.40. If arbitrary non-renewal *per se* does not give a dealer a right of action under the Automobile Dealers' Day in Court Act, then certainly no right of action arises when the refusal to renew is justified. Summary judgment must be granted in favor of World-Wide on plaintiffs' complaint and judgment in favor of World-Wide for $257.40 must be granted on World-Wide's counterclaim.

█ Volkswagenwerk Aktiengesellschaft is the German corporation which manufactures the Volkswagens. Volkswagen of America, Inc., is a New Jersey corporation which imports to the U. S. the Volkswagens and then sells them to various distributors throughout the country including defendant World-Wide. Neither Volkswagenwerk Aktiengesellschaft or Volkswagen of America have any direct dealings with the plaintiffs. Summary judgment must also be granted in favor of these defendants. Plaintiffs have produced no evidence which even remotely connects these defendants to this controversy. Plaintiffs contend that further proceedings in this case may reveal facts linking these defendants with the non-renewal of R. A.C.'s franchise. On summary judgment a plaintiff cannot rest on an ignorance of the facts but must obtain from discovery or otherwise information which it should seek to amplify or test by further discovery. Berry Brothers Buick, Inc. v. General Motors Corp., 257 F.Supp. 542 (E.D.Pa.1966). On a motion for summary judgment all inferences must be drawn in favor of the non-movant. However, the non-movant cannot withhold evidence until the date of trial and, unless it is shown by some admissible evidence that there is a genuine issue as to a material fact, summary judgment must be granted as it must be in this case.

Let appropriate orders be submitted.