**In re FRANK MEADOR BUICK, INC., Debtor.**

**FRANK MEADOR BUICK, INC., Plaintiff,**

**v.**

**GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant.**

Bankruptcy No. 7–80–00436.
Adv. No. 7–81–0041.

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

Aug. 31, 1981.

David A. Furrow, Rocky Mount, Va., for plaintiff.

Eugene E. Derryberry, Roanoke, Va., for defendant.

James F. Douthat, Roanoke, Va., for Creditors' Committee.

## OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The debtor Frank Meador Buick, Inc. (FMB) filed this action to enjoin General

Motors Acceptance Corporation (GMAC) to refrain from terminating a floor plan financing agreement (Agreement) entered into on July 3, 1980, and approved by this Court on July 9, 1980. During the pendency of this proceeding, FMB petitioned this Court to allow an administrative hearing on the issue of termination of the Agreement before the State Corporation Commission (SCC). For the reasons set out in the opinion, GMAC's Motion to Dismiss the FMB petition for an administrative hearing is sustained, and the petition is hereby denied. Further, on the merits of the arguments and for the reasons outlined herein, GMAC is enjoined from terminating the Agreement unless and until the debtor, FMB, is in default under the Agreement. Should FMB default under the Agreement, GMAC will be required nonetheless to obtain approval of this Court before terminating the Agreement so long as this Court retains jurisdiction.

The debtor FMB is a dealer in Buick automobiles, parts, and service in Roanoke, Virginia. On April 30, 1980, FMB filed a Chapter 11 petition in this Court. The plan of reorganization approved by this Court on December 18, 1980, called for the debtor to remain in possession and operate the business. Prior to the time FMB filed its petition, GMAC had provided "floor plan" financing for automobiles in the debtor's inventory. After the filing, GMAC was reluctant to continue the financing arrangement.

Consequently, with the consent of the general creditors' committee, this Court allowed FMB to pay GMAC $17,000.00 of an approximate $36,600.00 debt for delinquent interest charges due GMAC. GMAC was listed as an unsecured Class III creditor for the remaining $19,600.00 in interest due. This $17,000.00 payment was possibly a preferential payment to GMAC, but the Creditors' Committee agreed to the payment in consideration for continuation of floor plan financing for the debtor in possession.

In consideration of the $17,000.00 payment, GMAC and FMB entered into the Agreement now in question. Both the Agreement and the Order of this Court approving the Agreement refer to GMAC's right to terminate the Agreement for default, but neither document specifies the duration of the Agreement in the absence of default.

On January 28, 1981, GMAC gave FMB written notice that it would discontinue floor plan financing for FMB effective February 6, 1981. In an effort to negotiate continued floor plan financing, representatives of FMB and GMAC met in March, 1981. The evidence shows that at the March meeting GMAC indicated that it would consider reinstating a floor plan financing plan if FMB would pay GMAC some $29,000.00. The requested $29,000.00 was comprised of the $19,600.00 in unpaid interest charges listed in the Chapter 11 plan as GMAC's unsecured debt, $1,480.00 in attorneys fees, and the balance in interest charges.

*Petition to Allow Administrative Hearing*

Following the presentation of initial evidence, the debtor FMB petitioned this Court to allow FMB to request an administrative hearing before the State Corporation Commission (SCC). FMB argued that under the Virginia Code (*Va.Code*) an automobile manufacturer or its agent cannot terminate a dealer's franchise agreement without 60 days written notice to the dealer and a determination by the SCC, on request of the dealer, that the termination is for good cause. *See Va.Code* § 46.1–547(e) (1980 repl. vol.) A close reading of *Va.Code* § 46.1–1 would indicate that FMB's state remedy is, in fact, a determination by the Commissioner of the Division of Motor Vehicles, and not the SCC. FMB nevertheless argues persuasively that GMAC would be considered a manufacturer or agent of a manufacturer and that it would come within the purview of *Va.Code* § 46.1–547(e). FMB also prays this Court to exercise its option under 28 U.S.C. § 1471(d) to abstain from deciding the issue, and to allow the question to be determined in a state administrative procedure.

The jurisdiction of this Court under the Bankruptcy Reform Act of 1978 (Bankruptcy Code), enabling this Court to expeditiously resolve issues arising out of cases pending in this Court, is broad and far-reaching. The Code added a new chapter 90 to title 28 of the United States Code to expand and clarify the jurisdiction of the Bankruptcy Courts. *See* 28 U.S.C. §§ 1471–1482. This Court has jurisdiction to hear "all civil proceedings arising under title 11 or arising in or related to cases under title 11." *Id.* at § 1471(b). The term "proceeding" used in § 1471 has been interpreted in its broadest sense and is meant to encompass proceedings denominated "contested matters, adversary proceedings, plenary actions, and disputes related to administrative matters" under the previous Bankruptcy Act. *See* 9 *Bankr.L.Ed.* § 82:22 at 472 (1979).

■ This Court has heretofore held that the broad jurisdictional grant of 28 U.S.C. § 1471(b) permits it to hear and settle disputes that are subject, by contract, to arbitration. *See Cross Elec. Co., Inc. v. John Driggs Co., Inc.,* 9 B.R. 408, 3 C.B.C.2d 925, 929 (Bkrtcy.W.D.Va.1981) (*Cross Electric*). The administrative proceeding sought by FMB is in the nature of an arbitration hearing. For the reasons given in the *Cross Electric* case, most notably this Court's concern for an expeditious and orderly processing of cases, this Court declines to abstain from ruling on the question before it. The petition of the debtor FMB will therefore be denied, and GMAC's motion to dismiss the petition will be granted.

*Complaint to Prohibit Termination of Floor Plan Financing*

The parties have presented extensive evidence and have completely briefed the issues presented by FMB's complaint. GMAC's ability to terminate the Agreement in this case turns on the characterization of the parties and their relationship and the characterization of the Agreement.

■ Based on the evidence, it is fair to characterize GMAC as an "automobile manufacturer" subject to the federal "Automobile Dealers' Day in Court Act," 15 U.S.C. §§ 1221–1225 (Dealers' Day in Court Act). *See Colonial Ford, Inc. v. Ford Motor Co.,* 592 F.2d 1126, 1129 (10th Cir.) *cert. denied,* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979). GMAC, as a wholly owned subsidiary of the manufacturer General Motors Corporation, is conclusively presumed to be under the control of the manufacturer. *Id.* The relationship between GMAC and General Motors is one for the purpose of facilitating distribution of automobiles manufactured by General Motors. *Id.* Given such a relationship, GMAC cannot avoid scrutiny under the terms of the Dealers' Day in Court Act.

The Dealers' Day in Court Act is a remedial statute aimed at curtailing coercive behavior by manufacturers in dealing with their franchisee dealers. *Id.* The written agreement or contract between a manufacturer and a dealer which purports to fix the legal rights and liabilities of the parties is a "franchise" under the statute. 15 U.S.C. § 1221(b). In this case, the Agreement approved by this Court is the franchise in question.

■ The standard by which to judge conduct of a manufacturer toward its franchisee dealer is a "good faith" standard. *Id.* at § 1222. Good faith under the Dealers' Day in Court Act is more limited than the general good faith standard. *Autohaus Brugger, Inc. v. Saab Motors, Inc.,* 567 F.2d 901, 911 (9th Cir.) *cert. denied* 436 U.S. 946, 98 S.Ct. 2848, 56 L.Ed.2d 787 (1978). A cause of action against a manufacturer for failing to act in good faith will lie only when the manufacturer acts unfairly and inequitably, and such conduct amounts to coercion or intimidation of the dealer. The existence of coercion or intimidation is a factual determination in each case. *Id.* *See* 15 U.S.C. § 1221(e); *Minson Plymouth, Inc. v. Chrysler Motors Corp.,* 554 F.2d 1266, 1267 (4th Cir. 1977). In at least four federal circuits, courts have held that the manufacturer engages in coercive or intimidating conduct under the federal statute when it makes a wrongful demand which, if not

complied with, will result in sanctions.[1] In finding coercion, the court must consider not only whether the manufacturer exerted pressure, but also its reasons for doing so. *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d at 911. In addition, there must be a causal connection between the dealer's resistance to the coercive conduct and the termination of the franchise. *Id.*

When a franchise contains no provision for cancellation without cause, it is assumed that the parties entered into the agreement in good faith and that they intended that the agreement would not be cancelled arbitrarily. *See* 62 *Am.Jur.2d Private Franchise Contracts* § 12 (1972) [hereinafter cited as *Am.Jur.2d*]. Termination of a franchise when a dealer fails to perform satisfactorily is not, without more, evidence of a lack of good faith. *Marquis v. Chrysler Corp.*, 577 F.2d 624, 632 (9th Cir. 1978). If a manufacturer uses threat of termination, however, to enhance its bargaining position, then the manufacturer is clearly in violation of the federal statute. *Chinetti-Garthwaite Imports, Inc., v. Ferrari Societa Per Azioni Esercizio Fabbriche Automobile e Corse*, 463 F.Supp. 73, 79 (E.D.Pa.1978). In any event, notwithstanding a dealer's breach of the franchise contract, the franchise cannot be terminated without proper notice. *Am.Jur.2d, supra* at § 14. In Virginia, the written notice period for termination of a franchise is statutorily prescribed to be sixty days. *Va.Code* § 46.1–547(e) (1980 repl. vol.).

In this case, the evidence shows and GMAC admits that FMB was not in default under the Agreement, and had not been in default at any time. At the hearing, the GMAC representative testified that the reason for the termination was a decline in net worth or "credit base" of the dealer. (Tr. at 23.) In general, a manufacturer's decision to terminate a franchise because of a dealer's inadequate financial strength is not a decision lacking in good faith under the statute. *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d at 912. In this case, however, the dealer is a debtor in possession under the Bankruptcy Code. The manufacturer, GMAC, was well aware of the circumstances of FMB, and of its role in the rehabilitation plan of the debtor when it agreed to continue the floor plan financing.

The evidence shows that the debtor's position is not significantly changed now from what it was when GMAC renewed its financing. In fact, between the execution of the Agreement in July and the notice of termination in January, 1980, the dealer's net worth had declined $5,000.00, from approximately negative $200,000.00 to approximately negative $205,000.00. (Tr. at 22 & 33) After maintaining the floor plan financing from July until January with no significant change in circumstances, GMAC gave FMB one week's written notice of termination.

Counsel for the General Creditors' Committee contended in argument against termination, that GMAC by the Agreement to continue floor planning, had extracted a preferential position by the payments on its unsecured debt owed by FMB. The Creditors' Committee contends that GMAC is not acting in good faith and in effect is using the argument of reduction in net worth as a mere excuse to terminate now that it has its preferential payment. This Court finds substance to this contention.

After sending the termination notice, GMAC agreed to a meeting with FMB in March, 1981, to discuss possible reinstatement of the franchise. At that meeting GMAC indicated that with payment of approximately $29,000.00, it would consider reinstatement of the Agreement. According to an informal accounting made by GMAC, the $29,000.00 was comprised of the $19,600.00 unsecured claim of GMAC and certain attorneys fees and interest charges.

1. *See Francis Chevrolet Co. v. General Motors Corp.*, 602 F.2d 227, 229 (8th Cir. 1979); *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901, 911 (9th Cir.), *cert. denied* 436 U.S. 946, 98 S.Ct. 2848, 56 L.Ed.2d 787 (1978); *Fray Chevrolet Sales, Inc. v. General Motors Corp.*, 536 F.2d 683, 685 (6th Cir. 1976); *Rea v. Ford Motor Co.*, 497 F.2d 577, 585 (3rd Cir.), *cert. denied* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 106 (1974).

Although counsel for GMAC argues that the $29,000.00 payment was sought from the president of FMB as individual guarantor, and not from FMB, Incorporated, that distinction was not clear to the participants in the meeting, nor did the GMAC witness make that clear at the hearing before this Court. (Tr. at 52–53.) In any event, the effect of the meeting and discussion was an intimation by GMAC that if FMB would pay $29,000.00, then GMAC would reconsider its termination of the Agreement. This discussion amounted to a wrongful demand for payment of funds of the Debtor, FMB, whose funds are under the control of this Court. The use of the Agreement as leverage for that payment was coercive conduct, lacking in good faith as that term is defined under 15 U.S.C. § 1221(e).

For the foregoing reasons, it is

ORDERED

(1) that the motion to proceed administratively before the State Corporation Commission is denied;

(2) that the Defendant GMAC is hereby enjoined and restrained from terminating the floor plan Agreement approved by this Court on July 9, 1980, unless and until the Debtor FMB is in default under the terms of the Agreement, or unless otherwise determined by this Court.

Service of a copy of this Opinion and Order is being made by mail to the Debtor; David A. Furrow, Esq., Counsel for Plaintiff; Eugene E. Derryberry, Esq., Counsel for Defendant; and James F. Douthat, Esq., Counsel for Creditors' Committee.