**HUBBARD CHEVROLET COMPANY, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. J85–1178(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Oct. 1, 1987.

Kenneth A. Rutherford, Thomas, Price, Alston, Jones & Davis, Jackson, Miss., for plaintiff.

Natie P. Caraway and Joseph P. Wise, Wise, Carter, Child & Caraway, P.A., Jackson, Miss., Edward C. Wolfe, Sr. Counsel, General Motors Corp., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant General Motors Corporation (GM) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has timely responded to the motion and upon consideration of the memoranda along with attachments submitted by the parties, the court is of the opinion that the motion should be granted in part and denied in part.[1]

Plaintiff, Hubbard Chevrolet Company (Hubbard), has been in existence as a Chevrolet dealership in Utica, Mississippi since 1927. The president, owner and operator of that establishment is Shelby McKee. During their relationship, the parties have operated under a series of dealer agreements. The agreement in effect at the time relevant to the lawsuit was executed on November 1, 1980 and was for a term of five years. In 1984, Hubbard executed a new agreement, and a new five-year agreement was signed on November 1, 1985. Each of the agreements specifies Utica as the dealership location.

Although Hubbard was generally profitable in the 1970s and sold more new vehicles than the planning potential[2] estab-

---

1. This court has jurisdiction pursuant to 28 U.S. C. § 1332. In the complaint, plaintiff alleged that in addition to diversity jurisdiction, this court has pendent jurisdiction to entertain plaintiff's "non-federal" or state law claims. Since diversity jurisdiction is apparent, plain- tiff's allegation regarding jurisdiction over pendent state law claims is superfluous.

2. Planning potential is defined as:
   a conservative, but reasonably expected, annual new car and/or truck unit sales level, for a specific geographic Area of Primary Sales

lished by GM, the population of Utica began to decline while the population increased in another town in Hubbard's area of primary responsibility,[3] Raymond, Mississippi. Commencing in 1980, Hubbard unsuccessfully sought GM's permission to relocate Hubbard's dealership premises from Utica to Raymond. Then in 1984, GM, through its Chevrolet Division, reduced Hubbard's dealership area of primary responsibility by removing Raymond from the area and assigning it to the Jackson area, and also reduced Hubbard's planning potential by more than fifty percent. According to the allegations of the complaint, GM's refusal to allow the relocation of Hubbard's business premises, coupled with its reduction of Hubbard's area of responsibility and planning potential, have made it impossible for Hubbard to continue as a viable Chevrolet dealership.[4] Plaintiff has alleged several claims against GM; specifically, plaintiff avers that GM's actions constituted a violation of the Automobile Dealer's Day in Court Act (DDCA), 15 U.S.C. § 1221–1225, that GM violated the analogous Mississippi Act, Miss.Code Ann. § 63–17–73 (1972), and that GM is liable for breach of fiduciary duty, breach of the covenant of good faith and fair dealing and interference with prospective business relations. GM has moved for summary judgment on all counts of the complaint.

■ The Automobile Dealer's Day in Court Act provides that an automobile dealer may bring suit against an automobile manufacturer to

recover the damages by him sustained ... by reason of the failure of said automobile manufacturer ... to act in good faith in performing or complying with any of the terms and provisions of the franchise or in terminating, canceling, or

not renewing the franchise with said dealer: *Provided,* That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

15 U.S.C. § 1222. Good faith, as that term is defined under the DDCA, is the

duty of each party ... to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided,* That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

15 U.S.C. § 1221(e). Courts construing an automobile manufacturer's "good faith" duty under the DDCA have consistently held that failure to exercise good faith has a limited and restricted meaning and is not to be construed liberally. *Autohaus Brugger, Inc. v. Saab Motors, Inc.,* 567 F.2d 901, 911 (9th Cir.), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2848, 56 L.Ed.2d 787 (1978). Under the Act, good faith is more limited than a general good faith standard, *In re Frank Meador Buick, Inc.,* 13 B.R. 841, 844 (Bankr.W.D.Va.1981), and mere arbitrariness or bad faith, as that term is generally understood, by the automobile manufacturer is not enough to constitute a violation of the DDCA. *Sink v. Ford Motor Co.,* 549 F.Supp. 245 (E.D.Mich.1982). The question then is *not* whether the manufacturer acted unfairly or inequitably in its business relations with the dealer, but whether the manufacturer failed to act in good faith. *Southern Rambler Sales, Inc. v. American Motors Corp.,* 375 F.2d 932 (5th Cir.), *cert. denied,* 389 U.S. 832, 88 S.Ct. 105, 19 L.Ed.2d 92 (1967). To estab-

and Service Responsibility, which properly located dealerships with adequate facilities and effective manpower and management should be able to profitably attain therein over the business cycle.

3. Area of primary responsibility (APR) is described by GM as the market area GM uses to measure a dealer's sales performance. The section of the agreement between the parties provided at Article II(c)(3), "Additional Provisions",

that Hubbard's sales performance would be evaluated on the basis of registrations of new Chevrolets in the dealer's APR.

4. In addition to those claims, Hubbard has alleged that it requested that it be assigned other GM lines such as Buick and Oldsmobile, but that request was denied by GM. This too, it claims, contributed to what will be its eventual demise.

lish a lack of good faith and consequent violation of the Act, the dealer must show that the manufacturer coerced or intimidated the dealer and that the coercion was intended to achieve an objective that was improper or wrongful. *Quarles v. General Motors Corp. (Motors Holding Division)*, 597 F.Supp. 1037 (D.C.N.Y.1984), *aff'd*, 758 F.2d 839 (2nd Cir.1985). "Coercion" or "intimidation" requires a wrongful demand which will result in sanctions if it is not complied with. *Fray Chevrolet Sales, Inc. v. General Motors Corp.*, 536 F.2d 683, 685 (6th Cir.1976). In fact, in the absence of a claim that the manufacturer warned the dealer to do or not do a particular act or face termination, there is no "either-or" attempt at coercion or intimidation and hence there can be no recovery under the DDCA, even if the dealer felt that he was being coerced. *Id.*

In the present case, plaintiff claims that GM's course of conduct toward it amounted to lack of good faith as that term is defined under the DDCA. Plaintiff contends that GM's refusal to allow Hubbard to relocate, along with its refusal to approve a successor dealer in Utica, constitutes constructive termination of its dealership, without cause, with coercion and without good faith on the part of GM.

The "General Motors Dealer Agreement," which purports to control the relationship between the parties, designates "105 White Oak Street, Utica, Mississippi" as the location at which Hubbard may sell Chevrolet products. It further specifies that Hubbard may not sell Chevrolet products at any other location without the permission of GM.[5] Hubbard states that it is well known that if a dealer violates this provision, he can be terminated by GM. In essence, plaintiff reasons that when defendant refused permission to relocate the dealership to Raymond or, according to plaintiff, to any other location where Hubbard could achieve sufficient sales to survive as a dealership, the threat of termi-

nation if Hubbard relocated without approval was well known to Hubbard; thus, the refusal of GM to allow Hubbard to move was absolute and "went beyond mere intimidation to the final act of coercion itself." Additionally, plaintiff alleges that GM in fact terminated Hubbard's dealership by advising that GM would not approve a dealer/operator in Utica after McKee since GM did not plan to continue Chevrolet dealer representation in Utica. Hubbard claims that it is therefore not free to sell its assets or even attempt to find a buyer since GM will not approve a future dealer in Utica. This, it contends, amounts to a "shutting down the dealership point" effective at a future date, which is "the ultimate act of coercion against the dealer."

In the opinion of the court, the conduct complained of by plaintiff does not amount to a lack of good faith by GM under the DDCA. It is essential to Hubbard's claim that it be able to demonstrate either actual or threatened coercion or intimidation. In *McDaniel v. General Motors Corp.*, 480 F.Supp. 666 (E.D.N.Y.1979), *aff'd*, 628 F.2d 1345 (2nd Cir.1980), the court observed that without proof of lack of good faith within the meaning of the DDCA, "there can be no relief under [the Act] ... even for arbitrary decisions with respect to termination of a dealership...." *McDaniel*, 480 F.Supp. at 676 (citations omitted). Moreover, the DDCA does not protect automobile dealers against "arbitrary" business decisions by an automobile manufacturer in respect of relocation or termination of a dealership. *Unionvale Sales Ltd. v. World-Wide Volkswagen Corp.*, 299 F.Supp. 1365 (D.C.N.Y.1969). And, absent coercion, automobile dealers are not protected under the DDCA against arbitrary refusals of automobile manufacturers to renew franchises. *See Berry Brothers Buick, Inc. v. General Motors Corp. (Buick Motor Division)*, 257 F.Supp. 542

---

**5.** Article II(B)(2), entitled "Changes" states:
  If Dealer desires to make any changes in the Dealership Location or in the uses or purposes of any of the Dealership Premises, Dealer agrees to give [GM] prior notice so [GM] can discuss the effect of the proposed changes with Dealer. No change in Dealership Location or in use of Dealership Premises in Dealership Operations will be made without written approval of GM.

(D.C.Pa.1966), *aff'd,* 377 F.2d 552 (3rd Cir. 1967). In the court's opinion, Hubbard has failed to allege conduct by defendant which amounts to coercion or intimidation. Therefore, plaintiff cannot maintain a claim under the DDCA and summary judgment is proper in favor of defendant GM.

■ The Mississippi statute analogous to the DDCA, Miss.Code Ann. § 63–17–73 (1972), addresses essentially the same conduct as the DDCA [6] and defines good faith precisely the same as does the federal act.[7] Unlike the federal act, however, the Mississippi version goes on to define "coerce" as

> the failure to act in good faith in performing or complying with any terms or provisions of the franchise or agreement. However, recommendation, exposition, urging or argument shall not be deemed to constitute a lack of good faith.

Miss.Code Ann. § 63–17–55(17). Hubbard contends that the statute's definition of coercion as lack of good faith in effect reverts the term good faith to its customary common law meaning of imposing a duty of good faith and fair dealing. The court is not persuaded by this argument. The statute clearly defines good faith; coercion, in turn, is simply defined with reference to good faith as that term is used in the Act itself. In the court's opinion, plaintiff's interpretation would render the stringent "good faith" standard of Miss. Code Ann. 63–17–55(17) meaningless and cannot be accepted. Since the definition of good faith is the same in both the state and federal laws, the analysis and conclusion would be the same under both. Accordingly, summary judgment is proper in favor of GM as to Hubbard's state DDCA claim.

Hubbard has sought damages against GM for tortious interference with its business relations. Specifically, plaintiff contends that GM has interfered with Hubbard's business relations with its customers in the Raymond, Mississippi area by refusing to permit Hubbard to relocate in Raymond so that it could adequately serve the Raymond area. Further, plaintiff asserts that GM has interfered with Hubbard's ability to sell its dealership assets by effectively and constructively terminating Hubbard's dealership without good faith. Plaintiff seeks damages for interference *not* with existing business relations or contracts, but with *prospective* relations with customers and purchasers.

■ A cause of action for tortious interference with business relations or contractual relations encompasses interference with a prospective relationship as well as an existing one. *Hayes v. Erwin,* 541 F.Supp. 397 (N.D.Ga.1982), *aff'd,* 729 F.2d 1466 (11th Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984). A claim for tortious interference with prospective contractual relations may be stated when an interferor prevents the making of a contract. To establish this claim, the plaintiff must establish that there was a reasonable probability that plaintiff would have entered into a contractual relationship, that defendant acted maliciously by intentionally preventing the relationship from occurring with the purpose of harming the plaintiff, that defendant was not privileged or justified, and that actual harm or damage occurred as a result. *See C.E. Services Inc. v. Control Data Corp.,* 759 F.2d 1241 (5th Cir.), *cert. denied,* 474 U.S.

---

**6.** The statute makes it unlawful for an automobile manufacturer

> (2) To coerce, or attempt to coerce any motor vehicle dealer to enter into any agreement with such manufacturer ... or to do any other act prejudicial to said dealer by threatening to cancel any franchise or any contractual agreement existing between such manufacturer ... and said dealer.
> (3) To terminate or cancel the franchise or selling agreement of any such dealer without due cause. The non-renewal of a franchise or selling agreement, without due cause, shall constitute an unfair termination or cancella-

tion, regardless of the terms or provisions of such franchise or selling agreement.
> (9) To prevent or attempt to prevent by contract or otherwise any motor vehicle dealer ... from selling or transferring any part of the interest of any of them to any other person.... However, no dealer ... shall have the right to sell, transfer or assign the franchise or any right thereunder without the consent of the manufacturer, distributor or wholesaler.

Miss.Code Ann. § 63–17–73(1)(d).

**7.** *See* Miss.Code Ann. § 63–17–55(16) (defining good faith).

1037, 106 S.Ct. 604, 88 L.Ed.2d 583 (1985). By definition, a "prospective" relationship does not require the present existence of the relationship. However, at the very least, it requires that at the time of the conduct complained of, there was a reasonable likelihood that the relationship would come into existence. This has been explained as follows:

> It is not necessary that it be absolutely certain that a prospective contract would have been entered into were it not for the interference. Reasonable assurance thereof in view of all the circumstances is sufficient. It is sufficient to show that the relationship between the plaintiff and another party had advanced to the point where the parties intended and were about to execute a contract or that negotiations were reasonably certain to result in a contract advantageous to the plaintiff.

45 Am.Jur.2d *Interference* § 40 (1969). Moreover, in order to establish the necessary "intent" on the part of the defendant, plaintiff must show that defendant had knowledge of the prospective contractual relationship he is accused of blocking. But it is not necessary that defendant have known the identity of the prospective purchaser, only that it knew that some party or parties had a prospective contractual or business relationship. *Verkin v. Melroy,* 699 F.2d 729 (5th Cir.1983).

 In the case at bar, plaintiff's claims relative to GM's alleged interference in the eventual sale of the business are insufficient as a matter of law. McKee, president of Hubbard, admitted in deposition testimony that he has not had any offers for the purchase of the business. There has been no indication by Hubbard that a sale of the business was proposed or was in the offing. There having been no prospect of sale, GM can hardly be said to have known of the "prospective contractual relationship." To survive a motion for summary judgment, the plaintiff must assert a specific and reasonable prospective contractual relationship that was interfered with. *See Joba Constr. Co., Inc. v. Burns & Roe, Inc.,* 121 Mich.App. 615, 329 N.W.2d 760 (1982). This, the plaintiff has failed to do.[8]

As regards plaintiff's claim of interference with its business relations with its customers in the Raymond area, that claim is likewise without merit. A prima facie case of tortious interference with business relations requires proof of the existence of a valid business relation or expectancy, knowledge by the alleged interferor of the relationship or expectancy, an intentional interference causing a termination or breach of the relationship or expectancy, and damage caused by the interference. *See* 45 Am.Jur.2d *Interference* § 50 (1969). In the case *sub judice,* there has been no showing that there was an "interference" by GM, intentional or otherwise. Although Raymond was removed from Hubbard's area of primary responsibility, that does not prevent Hubbard from selling automobiles to persons residing in the Raymond area as it has done since its establishment in 1927. Thus, plaintiff's claim must fail, and summary judgment should be granted in favor of GM on Hubbard's claim for tortious interference with contractual relations.

The court is of the opinion that as regards the rest of plaintiff's claims, disputed issues of material fact remain which prevent the granting of summary judgment as to those claims.

Accordingly, it is ordered that defendants motion for summary judgment is granted as to counts one, two and five of the complaint, and as to the remaining counts, the motion is denied.

---

8. This case is clearly distinguishable from *Frank Coulson, Inc. v. General Motors Corporation,* 488 F.2d 202 (5th Cir.1974), wherein the court held that the jury could find GM liable for tortious interference with a dealer's contract negotiations with the proposed purchaser of the dealership. Here, there is and has been no proposed purchaser of Hubbard nor is there any evidence that plaintiff has attempted to sell the business. Plaintiff in fact admits, through its president, McKee, that there were no prospective purchasers of the business.